Your Honors, may it please the Court, my name is Ryan Fortson of the Law Firm of Dorsey and Whitney, and I am representing Mr. Hiawatha Logan, the appellant in this case. Mr. Logan at the district court level had a directed verdict granted against him on the grounds that there was no evidence that his discharge was due to race. Now, all we are concerned about here is whether Mr. Logan presented a prima facie case or whether he would have been able to present a prima facie case. Was he able to present any evidence that there was anyone of any other race who was treated differently? MR. HIAWATHA LOGAN He did, yes. He did in his testimony assert that he was transferred and placed on a 90-day probationary period and that white employees who were transferred were not similarly placed on a 90-day probationary period. And he also testified, and this is MR. LOGAN I thought the evidence was everybody got a 90-day probationary period. MR. HIAWATHA LOGAN Well, Mr. Logan testified that he was placed on a 90-day probationary period that other whites were not. Now, the hospital did not itself present any evidence to contradict Mr. Logan's claims. And let me, if I can point to the testimony. This is in the first volume of the testimony on page 93. Mr. Logan says, other white individuals that were not placed on the 90-day appraisal. He says later on, I'm speaking about different individuals that I work for in these departments that I know for a fact were transferred into different areas and were not put on 90-day appraisals. But I was subject to one after being there for 15 years. Now, it may ultimately be that the hospital could present evidence that would contradict this. MR. LOGAN Where is this in the excerpts? 93, did he say? MR. HIAWATHA LOGAN This is in the transcript on page 93. Within the excerpts, Mr. Logan said that he was not placed on the 90-day appraisal. Let me see if I can find it within the excerpts. MR. LOGAN The reason I'm asking is that I wasn't clear that he did show that there was any treatment of him that was different from individuals of different races. So, I want to look at it. MR. HIAWATHA LOGAN And I am not entirely certain that this is in, let's see if it might be in the defense excerpt. Yes, on page 59 of the supplemental excerpt of record is the transcript page 93 of volume 1. MR. LOGAN Thank you. MR. HIAWATHA LOGAN And then also, if you turn a few pages later, this will be transcript page 97, which is supplemental excerpt of record 63. Mr. Logan discusses how he was given extra duties that were not given to white employees when they were transferred to different jobs. MR. LOGAN Thank you. MR. HIAWATHA LOGAN Yes. So, our contention here is that because Mr. Logan did present evidence that through his testimony that he was treated differently than other protected class members, that the prima facie case burden was met and that consequently directed verdict was inappropriate. MS. GOTTLIEB Did he, what was his evidence on the element of the prima facie case that  MR. HIAWATHA LOGAN Mr. Logan did testify, and this is, returning to the supplemental excerpt, and again on page 65, Mr. Logan testified that he was receiving satisfactory job evaluations prior to the series of events that led to his ultimate dismissal. MR. LOGAN I just followed up those references you showed me, and it doesn't say that the people, he says he knows that some people weren't put on 90-day appraisals, but he doesn't say that they were of any different race from him. Can you tell that from something else that gives context to it? MR. HIAWATHA LOGAN Which page are you looking at? I'm sorry. MR. LOGAN The ones you gave me, SCR 59 and 53. MR. HIAWATHA LOGAN 59. He says on line 5 of the transcript, speaking in terms of the other white individuals that was not placed on 90-day appraisals. MR. LOGAN I see. Thanks. Got it. MR. HIAWATHA LOGAN So to return to your question, he did present testimony that he received adequate job evaluations, and furthermore, his theory of the case is that he was transferred, he was not given the appropriate training to perform his job in a satisfactory manner, and Mr. Logan did, in fact, introduce and exhibit at trial, and let me see if I can find the page where this is addressed. Yes, this is on page SCR 63, which is transcript page 97 and page 98. Mr. Logan introduced an exhibit, which was the job instructions that were given to him to perform his job, and the district court later on, in dismissing Mr. Logan's case, described these job instructions as, quote, a bunch of garbage. So again, this is evidence that Mr. Logan presented that his case, that should have survived a prima facie claim, and his case would have been further bolstered if he had been allowed to admit into evidence the Anchorage Equal Rights Commission report, which he did attempt to introduce. This should have been allowed into the record as a public records exception under the hearsay rule 8038, but the district court refused to admit it on the grounds that it was hearsay. Well, there were three grounds that they refused to admit it on. The hospital had offered that it was hearsay and that it was a violation of Rule 403, and the district court accepted this and also added that the document had not been authenticated. With regard to the hearsay reason by the court, the Ninth Circuit has found that EEOC probable cause determinations are admissible, that it's reversible error not to admit them. This is in Plummer v. International Hotels and Bradshaw v. San Diego Zoo. And it's important to note here that EEOC probable cause determinations are not themselves a final report, just like the AERC probable cause determination is not a final report. It's just a step along the way. And in fact, the Ninth Circuit also in Hain v. Caruso said that a Nevada Equal Rights Commission probable cause finding should have been admitted into court, and the Anchorage Equal Rights Commission report is again along those same lines. Furthermore, the district court in a prior ruling on summary judgment, in dismissing a summary judgment motion brought by the hospital, commended the Anchorage Equal Rights Report as being a, quote, detailed recitation of facts and analysis, and concluded that the report, quote, has probable value and raises questions of material fact regarding defendants' alleged discriminatory treatment of Logan. And the court gave no reason why it relied upon the AERC report at the summary judgment stage and did not find it admissible later on at trial. The report, the hospital claims that the report was not created pursuant to law, and from what I gather from their claim, they're arguing that it, because a final report was not issued. Again, there's nothing in the hearsay exception that requires that a final report be issued before it can be admitted as a public record. And furthermore, the process by which this took place was that the AERC report was written and then transmitted to the Equal Rights, I would say the EEOC, to further carry on proceedings. Counsel, Rule 8038 says that factual findings resulting from an investigation made pursuant to authority granted by law come in under the public records and reports exception to the hearsay rule. Yes. That would appear to cover the factual findings, if there are any, but it doesn't appear to cover the conclusions of the investigator, or do you think it does? Well, I think it does because of Beach Aircraft v. Rainey, U.S. Supreme Court, which said that it is acceptable for public records under 8038C to include opinions. It said it was acceptable for conclusions or opinions drawn from the facts. Yes. But it left open, interestingly, the question of a legal conclusion, which I don't see that as a legal conclusion, although it does contain the conclusion that your client was discriminated against based on race. Well, I would suggest that EEOC probable cause determinations are, it's functionally the same. If those are admissible, and presumably they're admissible, in fact, the EEOC decision, probable cause finding in this case, was just barely over a page-long letter, did not recite any facts, really, whatsoever. It just said that a probable cause determination had been made by the EEOC. If something like that would be admissible, I would assume that... That's a conclusion. That's a conclusion. It is a conclusion, yes. And that's a legal conclusion, actually. But the thing that I don't understand about what the EEOC said, whether it was 107 or 19... 107. 107. This report, it recites facts about how, let's see, what's your client's name again? Logan. Yes. Was a long-term black employee who was terminated for failure to complete a 90-day probation and that there were four people in that category, two were black and two were white, but the whites were short-term employees. Yes. So to me, this all seems to be facts. Yes. Now, I mean, so couldn't, if there was a question about whether a legal conclusion or opinion was admissible, couldn't you just redact that part? Yeah, I think that would be entirely acceptable, and you would still have this recitation of facts in this page that you're pointing to here that would have been sufficient to avoid a directed verdict. I'm just wondering why it wasn't... I don't know what exactly, it's somewhat confusing the grounds, because it seemed as though the hospital asserted a different ground than which the court ruled on the inadmissibility of this document. I mean, even Durham grounds on appeal. Sure. Well, Mr. Logan was proceeding pro se at the trial, so I was not present, and I can't comment on what Judge Holland might have been. I see. Okay. All right. I didn't realize he was unrepresented. Yes. No, he was unrepresented down below. I would just like to add also on the authentication point that the court raises, that public records are presumed to be authentic. This is Gilbert v. City Westminster and Johnson v. City of Pleasanton. They can be challenged for trustworthiness. However, there are four elements for challenging trustworthiness. This is from Baker v. O'Connor Holmes. The timeliness of the investigation, the skill and experience of the investigator, whether or not a hearing was held, and the bias of the investigator. And the hospital did not raise any of these points in challenging the trustworthiness of the report in its brief. So what we have here is an Anchorage Equal Rights Commission report that was obviously found trustworthy by the Anchorage Equal Rights Commission. It was signed by the staff attorney. It was relied upon by the EEOC in filing suit. And in fact, the hospital states in its brief that the EEOC relied, its probable cause determination was based entirely, quote unquote, on the AERC report. And finally, the district court itself relied upon the AERC report in denying summary judgment. So I think clearly this report satisfies any Rule 403 objections. The probative value clearly outweighs the danger of any unfair prejudice. Prejudice means harmful plus non-probative. And here the report addresses all of the issues being contested. It is probative. Counsel, the report, as I understand it, says that the hospital has a policy requiring all employees who transfer to a new position to undergo a 90-day appraisal period. Is that correct? The report does state that, yes. And I do believe that that is the hospital policy. I believe Mr. Logan's testimony was that. What I'm wondering is if you take the legal conclusions out, if the judge had left the report in but redacted it to omit legal conclusions, whether there's any prejudice to Logan from excluding it. It seems like it undermines his prima facie case on the critical point. Well, I think Mr. Logan's testimony was that the hospital was not following its policy, that they had a certain policy of placing whites on probation, that they should have had a policy in which white employees who were transferred were placed on a probationary period, but that, in fact, the hospital was not following its testimony or its policy. I'm sorry. So, no. And the report does contain additional evidence that Mr. Logan did not present in his testimony, such as the fact that he and only one other black individual who were long-term employees were placed on probation and then fired, whereas the only two whites who were placed on probationary period and fired were short-term employees. They were not long-term employees. I believe it says that they were initial hires. So, I do believe that this would have bolstered his case. And furthermore, Mr. Logan did try to introduce three other witnesses who would have contributed to his claim of disparate treatment. His witnesses, I couldn't see where they – actually, I couldn't see where he or they had much personal knowledge to support what they were saying. The other witnesses basically are prepared to say that the hospital mistreated them in various ways. Yes. The relevance appears to be slight. Their attribution of a racial motive appears to be unsupported. It seems like the district judge would have discretion whether to admit or exclude that testimony and exercised it, and I can't see why it would be an abuse. Well, Washington v. Garrett says that you can show racial animus by circumstantial evidence, and Hain v. Crusoe says that you can have other witnesses testify as to the circumstantial evidence that could lead to an inference of racial discrimination. Circumstantial evidence means evidence. Well, yes. It has to be facts from which an inference can be drawn. Yes. And let me just review briefly the three witnesses. For instance, circumstantial evidence that somebody walked there, but somebody saying I was mistreated by different people in different ways at a different time and my guess is it was because of my race. I don't see where that's evidence of anything. Well, Ms. Walden, Laura Walden, did testify significantly as to the mistrust of black employees by the hospital administration. She listed several examples. This was in the voir dire. I'm sorry, what was your question? How does she know? Well, she knows from her own personal experience. I don't think her own personal experience would enable her to know. What she's doing is attributing bigotry to people that she may or may not be acquainted with, not on the basis of anything that they've, any remarks that they've made or any evidence to justify the attribution. She did cite remarks. She said that they called her you people. She talked about how white employees were allowed to go on lunch breaks and she was not, how she was required to sign out whenever she left, even to go to the bathroom, and that this was not required of white employees. So I do think that she presented direct evidence of a racial animus exhibited by the hospital administration. Mr. Alan Wilson, Mr. Logan was attempting to call him, and he was the other employee who was placed on a 90-day probationary period and was discharged, a black employee. And then Mary Clay, Mr. Logan tried to call to suggest that whites were hired over her for permanent positions from the temporary pool. So, again, these are witnesses that, speaking to personal experience, could show that there was racial discrimination on the part of the hospital or at least racial animus. Did the person who said you people have anything to do with Logan? It's unclear from what was presented in the testimony by Ms. Clay, sorry, by Ms. Walden, whether, who exactly made that statement. If I may, I'd like to reserve my 30 seconds for rebuttal. Thank you, counsel. Good morning. May it please the Court. My name is Jim Juliason, and I'm here on behalf of the defendant, Alaska Regional Hospital. Why wouldn't he make his prima facie case on whether whites were treated differently from blacks, based on the testimony your adversary pointed to where he says whites weren't subjected to a 90-day probation period? Well, Your Honor, certainly that is one thing that may have gone to assist in stating a prima facie case, but certainly the important factor, one of the most important factors in this case, is whether or not there was any evidence that he was, in fact, performing his job adequately at the time that the adverse employment action was taken. By his own testimony at trial, he was having problems fulfilling the duties of the job that he was assigned to. Right. That was the job he was moved to after the mailroom. And his complaint, as I understand it, is that you took him from the mailroom, which I understand is probably outside of time for this case. You took him from the mailroom, put him in a job that he was not trained for, and his complaint is that you put him there without giving him the proper training and then required him to do another job on top of that. So that's his complaint, that the hospital put him in a situation where it was impossible for him to adequately perform his job duties. I understand, Your Honor. And, of course, any complaint that Mr. Logan may have had with respect to his 1986 transfer from the mailroom is time-barred and cannot be considered as- So we're talking about the one where he's claiming he was put in an impossible situation due to the fact he was black. Actually, Your Honor, his testimony was that when he was first transferred out of the mailroom in 1996 and placed into a receptionist slash general office position, which within the same department that he was ultimately terminated from, that his job performance at that point in time was all right. In fact, that his first evaluation when he'd been put into that position was satisfactory in all respects. The hospital does not contest that. What the hospital does contest is that by the time of his termination in 1998, and he had been relieved of the receptionist duties that were associated with the general office clerk position by that time, that position, it's not, it wasn't before the jury why that particular position- Wait, there wasn't a jury, right? This is summary judgment? No, Your Honor, this was a directive verdict. Oh, directive verdict, I'm sorry. And it was a jury trial. Okay. And so, of course, the inquiry today is what information was before the jury for purposes of whether or not a directive verdict was proper. So it's really important that we look at those rulings that excluded certain evidence, right? Yes, I think that it's important that you look at those. I also think that it's important that you realize that the judge in this case properly exercised his discretion to exclude that evidence. And with the court's permission, I'll first address the exclusion of the Anchorage Equal Rights Commission's report. First of all, that report was never intended by the commission to be a public document. It was marked confidential. It was sent only to the EEOC. Does that matter under Beech Aircraft and Rule 803? I believe it does because it goes to the essence of what a public document is. It seems to go without saying that if, in fact, a document is not available to the public, it is not a public document. The commission, the Anchorage Equal Rights Commission, took the position when we requested copies of their file documents in this case, that they did not have to produce that document to us or to anyone else because it was, in fact, confidential, and also protected by attorney-client work product interagency confidentiality provisions and other sorts of things. What should we look at as authority under Rule 803-8 in Beech Aircraft for saying that a confidential report by an investigator to the agency does not fall within that exception? Well, I think that what we have to go to is the very definition of what a public document is. When you talk, I'd appreciate it if you'd use the words of Rule 803-8 so that I can figure out what you're hanging your hat on. I will, Your Honor. First of all— I'm reading the text of it there, and I don't see where, but I may be missing, that it requires what you're attributing to it. Well, 803— Just get the rule in front of you. You must have it right there. It states that—and actually, I don't think I can make this argument from looking at the rule itself, Your Honor, but certainly the commentary that has accompanied the rule, which I do not have before me, indicates that there's this indicia of trustworthiness, if you will, that excludes it from the hearsay because it's created pursuant to law, it's created pursuant to established agency procedures, which would indicate in this case that something was, in fact, completed by an impartial investigator, and all of those things go to trustworthiness. So you're saying that AERC is not an impartial investigator? I'm saying that this particular report wasn't created under any authority of law that is granted to the agency for several reasons, not the least of which is the city ordinances that enable the creation of these reports or the performance of these duties require that they be completed within a certain period of time, 240 days. Well, you're arguing—I mean, it seems to me that if you just read the text of 803.8, that this is a public record within the definition of 803.8, but your argument is that if you read the municipal code pertaining to the AERC, that that would undermine the status that 803.8 would otherwise give the report? Yes, Your Honor, in part because 803.8 states—it's C—states that made pursuant to authority granted by law. This memorandum, there is no authority in the ordinances that would give any credence to this document because by ordinance only the executive director can issue these types of reports. This report was not issued by an executive director. They were also required to distribute them to the parties. They were not distributed to the parties. What if it said that only the executive—because it says under Alaska Statute 1880.110, investigation and conciliation, the executive director or a member of the commission staff designated by the executive director shall informally investigate? Maybe you can tell me where it says it has to only be the executive director. Your Honor, that particular state statute is not applicable to the Anchorage Equal Rights Commission. It is a statute that governs the activities of the Alaska State Commission for Human Rights. I believe we would find that in Anchorage Municipal Code of Regulations 540-004-F. If the executive director determines that a complaint is not supported—I'm sorry, that's if it's not. At the conclusion, it's in Subpart A of that. At the conclusion of the investigation, the staff shall prepare a final report and prepare a proposed recommendation that it is or is not. The final report shall be immediately served upon the parties. And right now, I'm sorry, Your Honor, I do not— It would be a public record if the executive director signs it. And I'm sorry, I do not see it now. However, we do know that this report and its recommendation was never served on the parties. In fact, the agency refused to provide it to the parties and claimed, in fact, that it was a confidential privilege document. But it was sent to the EEOC? It apparently was sent to the EEOC. The record is somewhat unclear on that. What the record is clear on is that it was not produced to the parties by the Anchorage Commission. How do we tell that from the record that it wasn't served? We raised that issue both in our reply to Mr. Logan's opposition to summary judgment. We raised it again in a trial brief and also in an objection to exhibits immediately before trial. What I'm thinking is the scheme here at the Anchorage Municipal Code of Regulations seems to be that the staff prepares the report and proposed recommendations that served on the parties. They get a chance to make responses. The staff can schedule additional fact-finding. And at the end of the additional fact-finding, the staff recommends to the executive director that he or she make a determination that the complainer is or is not supported. Then the executive director makes a determination. And what you're saying is this wasn't served. That actually makes it a little hard for me to figure out where in this stage it is and how to know that it wasn't served. Is there an affidavit? Did somebody testify? Well, certainly no one testified to it at trial. Like I said, Your Honor, it was raised at least in our reply to Mr. Logan's opposition to summary judgment. And it was supported by an affidavit and included the list of documents that had been produced by the Anchorage Equal Rights Commission along with the commission's stated reasons for refusing to provide the confidential report to the EEOC. I agree this is confusing. I'm looking at that municipal code says they draft a report, then they give it to the hospital. And they have input. Well, this looks like this AERC report looks like it's beyond that because it includes the respondent's responses. So I'm not quite clear. This isn't very clear. But the respondent does have its position asserted within this report. That's correct, Your Honor. And there's just a lot of reasons why this is not what would be comparable to an EEOC's probable cause. It looks like it's not an executive director's report at all. It looks like it's a staff memorandum to the executive director. Is that right? That is correct. And the approval here isn't by the executive director. It's by a staff attorney. That's correct. And as you pointed out, Your Honor, in 540-004-B, the staff makes a recommendation to the executive director. And the executive director, you have to imply from that that he or she make a determination that the complaint is or is not supported. This report is not from the executive director. It's not a finding by the executive director in any respect. This report, according to the record, excuse me, Your Honor. I'm sorry. It's just, okay, so now we're thinking that it was a staff attorney report to the executive director. Why does that take it out of the category of public document? I mean, just, you know, a classic public document is the police officer doing his investigative report, which he sends over to someone else to make some final decision or recommendation to the DA. Why isn't this like that? I think that the primary difference in that, of course, other than, as the Court has noted, various conclusions of law and things that may well have been redacted had somebody requested that. However, I think the primary difference is that with the police report, any party, for instance, to a traffic accident can go in and obtain a copy of that police report. There's never any claim of privilege made. In fact, the agency that created this very document has essentially declared that it is not public. They refuse to produce it. Okay. Let me, this is, if everybody's done with this document, the consent decree, was that put in evidence or taken judicial notice of? I do not believe that it was placed in evidence, Your Honor, but I would have to look back at the record. The consent decree, of course, did not contain any finding or admission of any wrongdoing and simply obligated the hospital to update its EEO policies and provide updated training to supervisors. Right. But it does contain some evidence that's obviously not disputed about what Anchorage Equal Rights Commission did and what the EEOC did. And the EEOC sent, it says the action originated with the charge of discrimination filed with the Anchorage Equal Rights Commission and attaches the charge. And it says the EEOC sent the defendant a letter of determination on December 22nd with a finding that there was a reasonable cause to believe Logan's allegations were true and that it had violated Title VII. And then it goes on and says, but we're not admitting anything and we're going to resolve it this other way. And that letter is also attached. Why isn't that evidence of a prima facie case? Perhaps it would have been, Your Honor, or at least would have led that way had it been introduced to the jury. But once again, the determination of whether or not direct a verdict is proper is whether or not the jury at the close of his case could have concluded from the evidence before it all of the elements that were necessary to establish his case. Did Judge Holland have a copy of this document? Judge Holland was in, certainly it's in the court record. It was approved by the court, Your Honor. So it's in the record. That's correct. When you say in the court record it was approved by the court, are you saying it's somewhere in the files of the district court in a different file? No, Your Honor, I simply meant that it's in the record below. It would be in the court file. It's not in the excerpts of record. I certainly didn't put it in and I do not believe Mr. Logan doing so either. No, not excerpts. We're talking about, you know, when we review, we look at the entire district court record. Is it in the record? It is in the record because it was approved by the court and led to the withdrawal of the EEOC from this case. In the moments that I have left, I'll briefly attempt to address the exclusion of the various witnesses. There were three former employees. The judge permitted Mr. Logan to voir dire the witnesses to determine if they had any evidence that would tend to support his claim that he was discriminated against on the basis of race. I think the easiest one to talk about is Mr. Wilson. Mr. Wilson was prepared to testify that he too had been involuntarily transferred and that ultimately he wasn't provided any training and that ultimately he was discharged from his employment. That occurred in an unrelated department of the hospital. Mr. Wilson and Mr. Logan did not work together except they did know each other in passing. Mr. Wilson was not in a position to testify as to whether or not any discriminatory acts had in fact been suffered by Mr. Logan. More importantly, Mr. Wilson had sued the hospital following his termination. His case was dismissed for lack of evidence by the same trial judge who presided in Mr. Logan's case. It seems to go without saying that to permit him to then get on the stand, again complain that he was the victim of discrimination when it had been concluded that he was not, there was no evidence of it, it simply wouldn't be evidence that would be proper to present to the jury. The other two employees are not in the same place, they're not in the same time. What may have happened to them during the course of their earlier employment is simply not relevant to what may have happened to Mr. Logan. It was within the sound discretion of the court after conducting voir dire to exclude those witnesses and the court properly did so. The court has no further questions at this time. I will reserve my remaining time for rebuttal. Thank you, counsel. There's nothing to reserve, though.  I'm sorry, Your Honor. In my brief time, if I may just quickly address the Anchorage Municipal Regulations. The citations in the hospital's brief are actually an outdated version of the municipal regulations. If you look at the current version, it's much more clearly laid out. It's in Title V. Chapter 40 of Title V discusses the complaint process. Title Chapter 50 discusses the investigation process, and it says the commission shall investigate complaints. And then Chapter 60 discusses the conciliation process, which is the passages that the hospital was citing. And finally, Chapter 70 discusses the public hearing process. Counsel, it looks sort of critical to me whether whites were not subject to the 90-day probation period and blacks were. And the report says that that's not true, that everybody was subject to the 90-day probation period. I agree that's a critical question, and I think that that is one of the reasons why a directed verdict would be inappropriate. This is something that there needs to be more factual investigation on and testimony at trial. And, again, the Anchorage Equal Rights Commission report was not admitted at trial, so it's hard to say what the impact would have been. And the only evidence on that was evidence in Logan's testimony where he says blacks were and whites weren't, but he doesn't show that he has any personal knowledge for that. And then the report says the contrary, and I'm wondering whether exclusion of those parts of the report that would be admissible would have helped rather than hurt him, because it protected him from being contradicted by the report on that critical point. Well, certainly it may have gone ultimately to his credibility, but, again, I think that's a question for the jury. I don't think that's a question to be decided at the directed verdict stage.  Thank you, Counsel. And Logan versus Columbia Alaska Regional Hospital is submitted. We'll take a recess for 10 minutes. All rise. This court stands in recess for 10 minutes. Counsel?
judges: Hall, Kleinfeld, Wardlaw